**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| United States of America,            )<br>                                                      )<br>            Plaintiff,                     )<br>                                                      )<br>    vs.                                           )<br>                                                      )<br>Karin Ilene Condon,                    )<br>                                                      )<br>            Defendant.                 ) | **ORDER DENYING MOTION TO<br>REDUCE SENTENCE**<br><br>Case No. 3:12-cr-00091-10 |

Before the Court is Defendant Karin Ilene Condon's motion to reduce sentence filed on April 13, 2020. Doc. No. 960. On April 24, 2020, the Government responded in opposition to the motion. Doc. No. 963. Condon filed a reply brief on April 28, 2020. Doc. No. 964. Condon seeks a reduction in her sentence to time served based on "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018 ("FSA"). For the reasons below, the motion is denied.

**I.     BACKGROUND**

On December 13, 2012, a grand jury returned a superseding indictment against 16 defendants, including Condon. Doc. No. 122. The superseding indictment charged Condon with conspiracy to possess with intent to distribute and distribute in excess of 280 grams of a mixture and substance containing a detectable amount of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Id. On February 7, 2013, the Government filed an information certifying that Condon had accrued four prior felony drug convictions, resulting in an enhanced minimum mandatory sentence of life imprisonment under 21 U.S.C. § 841(b)(1)(A). Doc. No. 235. Pursuant to a plea agreement, Condon pleaded guilty on April 1, 2013. Doc. No. 261.

The presentence investigation report ("PSR") determined Condon's base offense level to be 32 under USSG § 2D1.1(c)(4). Doc. No. 465, ¶ 39. No specific offense characteristics or upward adjustments applied, leaving the adjusted offense level unchanged at 32. Id. ¶ 44. Due to two of her prior convictions qualifying as controlled substances offenses as defined in USSG § 4B1.2(b), Condon met the career offender criteria under USSG § 4B1.1, increasing the offense level to 37 and automatically placing her in criminal history category VI. Id. ¶¶ 45, 73. The PSR also independently designated Condon in criminal history category VI with 14 scorable criminal history points. Id. ¶ 72. A three-level downward adjustment applied for acceptance of responsibility and timely notification under USSG § 3E1.1, culminating in a total offense level of 34. Id. ¶ 48. The guidelines accordingly called for a sentence of 262-327 months' imprisonment. Id. ¶ 130. But because the statutory mandatory minimum exceeded the applicable guideline range, USSG § 5G1.1(b) provided for a guideline sentence of life imprisonment. Id.

At sentencing on October 17, 2013, the Government moved for a departure below the minimum mandatory and the guideline range pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1. Doc. No. 473. Based on Condon's substantial assistance to the Government, the Court[1] sentenced Condon to 180 months' imprisonment. Doc. No. 476. Condon did not pursue a direct appeal, but on December 30, 2013, she filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Doc. No. 546. Judge Erickson denied Condon's § 2255 motion on March 20, 2014, noting that her sentence was "one of the shortest sentences [the Court] has ever imposed on a person facing a mandatory minimum life sentence." Doc. No. 588, p. 12.

---

[1] The Honorable Ralph R. Erickson, then Chief Judge of the United States District Court for the District of North Dakota, now Circuit Judge of the United States Court of Appeals for the Eighth Circuit.

The Bureau of Prisons ("BOP") placed Condon at FCI Waseca. Now 61 years old, Condon is serving the eighth year of her sentence. Condon purports to suffer from "asthma, chronic obstructive pulmonary disease, cardiovascular disease, hepatitis C, hypertension, and hidradenitis suppurativa (an inflammatory skin disease that is frequently described as an auto-immune disorder)." Doc. No. 960, p. 2. Although Condon did not include supporting medical records with her motion, the PSR confirms much of her medical history. Doc. No. 465, ¶¶ 114, 115. Through counsel, Condon submitted a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to the warden at FCI Waseca via email and fax on March 23, 2020. Doc. Nos. 964-1, 964-2, 964-3. The warden denied the request on April 9, 2020. Doc. No. 963-1.

## II.  DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). As one narrow exception to that rule, a court "may reduce the term of imprisonment" when "extraordinary and compelling reasons" exist and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."[2] 18 U.S.C. § 3582(c)(1)(A)(i). The 18 U.S.C. § 3553(a) factors also must support the reduction. Id. The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### A.  Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now

---

[2] In lieu of extraordinary and compelling reasons, the statute also permits a sentence reduction where a defendant is at least 70 years old and certain additional conditions are met. See 18 U.S.C. § 3582 (c)(1)(A)(ii). Condon is 61 years old, so this avenue for relief is foreclosed.

3

permitted courts to grant compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Condon concedes that she has not exhausted her administrative appeals through the BOP and acknowledges that she filed her motion before 30 days had lapsed from the time the warden at FCI Waseca received her compassionate release request. Nonetheless, she asserts the issue is moot because the 30-day waiting period has since expired.[3] The Court agrees. True enough, the statute appears to envision that a defendant may not file a motion for compassionate release until "<u>after</u> . . . the lapse of 30 days." Id. But the Court concludes that dismissing the motion without prejudice for failure to comply with the statute's exhaustion regime would be a meaningless exercise considering Condon could simply refile an identical motion today in compliance with the 30-day waiting requirement. Therefore, the Court need not address the parties' arguments regarding the jurisdictional or otherwise mandatory nature of the statute's exhaustion scheme because 30 days have lapsed since the warden at FCI Waseca received Condon's compassionate release request. Any failure to comply with § 3582(c)(1)(A)'s exhaustion requirement is therefore moot under these facts. The Court will proceed to the merits.

      **B.**      **Extraordinary and Compelling Reasons**

Condon attempts to advance two distinct extraordinary and compelling reasons for a sentence reduction. First, she contends that the COVID-19 pandemic, in conjunction with her

---

[3] Condon contends that the warden had "receipt" of her compassionate release request when sent on March 23, 2020, while the Government's position is that the warden was not in "receipt" of the request until March 30, 2020. The Court need not resolve this question because, as of April 29, 2020, 30 days have elapsed from either date.

4

underlying health problems, renders her particularly vulnerable to serious illness while incarcerated. Second, she asserts that a perceived disparity between the sentence she received in 2013 and the sentence she may have received if sentenced after the FSA's enactment provides a standalone basis for relief.

The compassionate release statute does not define what constitutes "extraordinary and compelling reasons." Instead, Congress has dictated that the Sentencing Commission, through a policy statement, "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including . . . a list of specific examples." 28 U.S.C. § 994(t). To meet its statutory obligation, the Commission has promulgated USSG § 1B1.13. The policy statement itself largely mirrors the compassionate release statute's language. See USSG § 1B1.13(1)-(3).

More pertinent here is Application Note 1 to the policy statement. So long as a defendant does not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," the Application Note delineates four instances that demonstrate extraordinary and compelling reasons for compassionate release. USSG § 1B1.13(2); id. app. n.1. The first three circumstances set out in subdivisions (A) through (C) pertain to a defendant's medical condition, age, or family circumstances, respectively. See id. app. n.1(A)-(C). Condon does not seek relief on these grounds. Rather, her motion rests exclusively on subdivision (D)—the catch-all provision. This subdivision authorizes a sentence reduction when: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than . . . the reasons described in subdivisions (A) through (C)." Id. app. n.1(D).

The Sentencing Commission, currently lacking a quorum, has yet to update § 1B1.13 since Congress amended § 3582(c)(1)(A). The policy statement still contemplates a motion for

5

compassionate release originating solely from the BOP Director—clearly no longer the case. See USSG § 1B1.13. Seizing on this vacuum, several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges. See, e.g., United States v. Fox, Criminal No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); United States v. Beck, 1:13-CR-186-6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); United States v. Cantu, Criminal Action No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019). Other district courts disagree. See, e.g., United States v. Lynn, CRIMINAL NO. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019); United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 2422601, at *2-3 (D.N.M. June 10, 2019); United States v. Shields, Case No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019). Indeed, this Court recently determined that § 3582(c)(1)(A)'s plain language mandates adherence to the policy statement as written. United States v. Rivera, Case No. 1:16-cr-00239 (D.N.D. Nov. 25, 2019). Nevertheless, even assuming arguendo that the Court possesses the authority to find other extraordinary and compelling reasons for purposes of this motion, Condon does not meet the burden to demonstrate that such reasons exist here.

    1.    COVID-19

While sympathetic to Condon's concern regarding the effects of COVID-19 in the federal prison system, the Court does not find that her circumstances clear the high bar necessary to warrant a sentence reduction at this time. As a useful starting point, the BOP has promulgated a program statement that sets out criteria for determining when extraordinary and compelling reasons exist for compassionate release motions. BOP Program Statement No. 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The program statement expresses on a

macro level that motions should generally be based on circumstances "which could not reasonably have been foreseen by the court at the time of sentencing." Id. at 1.

Turning to the specific criteria, most of the scenarios described in the program statement do not apply in this instance. See generally id. (explaining that compassionate release may be appropriate for inmates with terminal illnesses, those unable to care for themselves in the prison environment, or those with extenuating family circumstances, etc.). The provision nearest to Condon's circumstances states as follows:

> **Elderly Inmates with Medical Conditions.** Inmates who fit the following criteria:
>
> ■ Age 65 and older.
> ■ Suffer from chronic or serious medical conditions related to the aging process.
> ■ Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility.
> ■ Conventional treatment promises no substantial improvement to their mental or physical condition.
> ■ Have served at least 50% of their sentence.
>
> Additionally, for inmates in this category, the BOP should consider the following factors when evaluating the risk that an elderly inmate may reoffend:
>
> ■ The age at which the inmate committed the current offense.
> ■ Whether the inmate suffered from these medical conditions at the time the inmate committed the offense.
> ■ Whether the inmate suffered from these medical conditions at the time of sentencing and whether the [PSR] mentions these conditions.

Id. at 6. In application, Condon does not meet the age threshold, and she has not asserted that her health conditions either cannot be managed or diminish her ability to function in the prison environment. On the other hand, she has completed over half her sentence and suffers from chronic or serious medical conditions. But Condon was well into her 50s when she committed her offense, and Judge Erickson was demonstrably aware of her medical conditions at the time of sentencing. See Doc. No. 465, ¶¶ 114, 115 (summarizing medical history); Doc. No. 588 ("At the time of

7

sentencing, Condon was a 55-year-old woman with significant health problems, in addition to her chemical dependency issues."). In other words, Condon's age and medical conditions were not only reasonably foreseeable—but were in fact accounted for—at sentencing. Several general factors included in the program statement weigh against compassionate release as well. See BOP Program Statement No. 5050.50 at 12. Condon has a significant criminal history that placed her in the highest criminal history category available. Judge Erickson also noted in denying her § 2255 motion that her previous "federal supervised release was a continuous parade of violations, substance abuse treatment, and new criminal activity." Doc. No. 588, at 13. In short, Condon is a less than ideal candidate for compassionate release under the program statement.

Adding the COVID-19 pandemic to the equation does not alter the outcome. Though she presents a plethora of generalized information about the dangers of COVID-19 in correctional facilities, Condon has not shown any particularized risk at this juncture. FCI Waseca has yet to report a confirmed case. See BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited May 4, 2020). Meanwhile, the State of Minnesota, where FCI Waseca is located, has reported 7,234 cases and 428 deaths. See Situation Update for Coronavirus Disease 2019 (COVID-19), Minn. Dep't of Health, https://www.health.state.mn.us/diseases/coronavirus/situation.html (last visited May 4, 2020). And the State of North Dakota, where Condon proposes to reside if released, has reported 1,225 cases and 25 deaths. See Coronavirus Cases, N.D. Dep't of Health, https://www.health.nd.gov/diseases-conditions/coronavirus/north-dakota-coronavirus-cases (last visited May 4, 2020). Condon further relies on reports of inadequate testing in BOP facilities, insinuating that there may be asymptomatic or unconfirmed cases circulating among the prison population. But the possibility of asymptomatic infection and testing capacity issues are not unique to correctional facilities. Suffice it to say that

8

at present, the empirical evidence does not bear out Condon's assertion that her incarceration markedly increases her risk of exposure.

As the Third Circuit Court of Appeals recently commented, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release. . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In line with that reasoning, district courts have declined to grant compassionate release motions under circumstances similar to Condon's. See e.g., United States v. Gamble, No. 3:18-cr-0022-4(VLB), 2020 WL 1955338, at *4 (D. Conn. Apr. 23, 2020) (denying compassionate release where 47-year-old defendant had served five months of 92-month sentence and suffered from diabetes at a facility with confirmed cases in one inmate and 23 staff members); United States v. Hylander, No. 18-CR-60017-BLOOM, 2020 WL 1915950, at *2 (S.D. Fla. Apr. 20, 2020) (denying compassionate release where 66-year-old defendant had served one-third of sentence and suffered from chronic hypertension, edema, gastroesophageal reflux disease, stomach ulcers, high cholesterol, obesity, and was pre-diabetic); United States v. Moskop, No. 11-CR-30077-SMY, 2020 WL 1862636, at *1 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where 72-year-old defendant had served less than half of 240-month sentence and suffered from "various acute and chronic conditions including depression, high blood pressure, high cholesterol, an enlarged prostate, hearing loss, kidney disease, bleeding on the brain, and mental deterioration"). Moreover, the BOP has undertaken an extensive response effort to prevent and mitigate the spread of COVID-19 in its facilities, including screening, visitation, and social distancing measures. See BOP Implementing Modified Operations, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 4, 2020). Condon's motion has not shown that the BOP's response to the pandemic at FCI Waseca has been inadequate in any way. Accordingly, Condon

9

has not met the burden to demonstrate that her susceptibility to COVID-19 while incarcerated presents an extraordinary and compelling reason for a sentence reduction.

### 2. Sentencing Disparity

Condon's contention that a disparity between the sentence she received in 2013 and a sentence she may receive today is unpersuasive. To be sure, some district courts have wielded § 3582(c)(1)(A) to grant compassionate release predicated on sizable temporal sentencing disparities. See, e.g., United States v. Urkevich, 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (granting compassionate release where defendant's offenses would have yielded 480 fewer months of imprisonment under current sentencing regime). And Condon correctly points out that under the FSA she would face a 15-year mandatory minimum rather than mandatory life.[4] But the motion wholly ignores her unmodified status as a career offender. If sentenced today, Condon's applicable guideline range would rest at 262-327 months' imprisonment as initially calculated in the PSR, rendering the hypothetical 15-year minimum mandatory irrelevant. Condon's ultimate sentence of 180 months represents an approximate 32% reduction from the low-end of that guideline range—an entirely plausible sentence based on the substantial assistance factors under USSG § 5K1.1. So Condon cannot definitively show that she would receive a lower sentence under the FSA, much less the kind of gaping sentencing disparity that other courts have relied upon to grant compassionate release.

---

[4] Two of her certified prior felony convictions would not meet the definition of a "serious drug offense" now included in 21 U.S.C. § 841(b)(1)(A) because they carried less than a ten-year maximum term of imprisonment, and two others resulted from a single course of criminal conduct. See Doc. No. 235. As a result, only one of her convictions would qualify for enhancement under 21 U.S.C. § 851(a)(1) today.

Even setting aside Condon's career offender designation, Congress declined to make the FSA's sentencing amendments retroactive. See First Step Act of 2018, 115 Pub. L. No. 391, § 401, 132 Stat. 5194, 5222. That means Condon's sentence is far from extraordinary, but instead is merely akin to similarly situated defendants sentenced prior to December 21, 2018. Further, as Judge Erickson remarked, Condon received "one of the shortest sentences [the Court] has ever imposed on a person facing a mandatory minimum life sentence." Doc. No. 588, p. 12. The Court finds that Condon's assertion of a perceived sentencing disparity fails to evince extraordinary and compelling reasons to support a sentence reduction.[5]

## III. CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Condon's motion to reduce sentence (Doc. No. 960) is **DENIED**. The Court also declines Condon's alternative request for a recommendation that the BOP place her on home confinement, leaving such a determination to the BOP's discretion.

**IT IS SO ORDERED**.

Dated this 5th day of May, 2020.

/s/ Peter D. Welte  
Peter D. Welte, Chief Judge  
United States District Court

---

[5] Considering this conclusion, the Court need not address the 18 U.S.C. § 3553(a) factors or whether Condon poses a danger to any other person or the community under 18 U.S.C. § 3142(g) if released.

11